UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DLR, LLC, | § § § | |
|     *Plaintiff*, | § § | Civil Case No. 3:19-CV-2587-X |
| v. | § § | |
| MICHAEL MONTOYA, | § § | |
|     *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

    This case involves an alleged breach of a noncompetition agreement. DLR, LLC (DLR) sued when Michael Montoya left the company to join a key competitor in California. DLR has fully briefed its request for a temporary restraining order, preliminary injunction, and permanent injunction. [Doc. No. 6]. Also pending are: (1) a motion for expedited discovery from DLR for evidence regarding its request for a preliminary injunction [Doc. No. 20]; (2) a motion to dismiss, where Montoya argues this Court lacks personal jurisdiction over him [Doc. No. 32]; and (3) a motion by Montoya to stay and abate this proceeding in light of a California state court action regarding the noncompetition agreement. [Doc. No. 12].

    For the reasons explained more fully below, the Court **GRANTS** the motion to dismiss because DLR has not made a prima facia case that its claims against Montoya arose from his contacts with Texas. Accordingly, the Court dismisses the action without prejudice and need not reach the remaining motions.

## I. Factual Background

DLR is a data center and colocation firm that serves 2,000 companies in 14 countries. DLR claims to maintain sensitive confidential information that enables it to compete in a highly competitive industry. DLR hired Montoya as its Chief Information Security Officer on September 10, 2018, giving him access to DLR's confidential information. He was to perform his duties out of the Dallas office, but DLR permitted him to reside in New Mexico and telecommute. DLR paid him a sign-on bonus of $50,000 upon his agreement in writing to stay with DLR for 18 months. Montoya's employment agreement required Montoya to safeguard DLR's confidential information and prohibited him from working for six months in a similar role for any competing business within a 100-mile radius of any location in which Montoya "worked, regularly represented the Company, or had Material Business Contact with the Company's Customers" in the year before his termination.

Less than 13 months later, Montoya notified his supervisor he intended to resign to work for Equinix, Inc., an alleged competitor. The next day, DLR's general counsel sent a letter asking Montoya to confirm in writing that he did not retain any DLR property or information—which Montoya did not respond to. The letter also requested Montoya repay his sign-on bonus within 18 months. Equinix allegedly hired Montoya into the same role in which he served DLR. When DLR examined Montoya's email account, it discovered he emailed confidential DLR information to his personal email account before he resigned.

After receiving a letter informing it of Montoya's noncompetition agreement, Equinix and Montoya sued DLR in state court in California on October 23, 2019. The California complaint asserts causes of action for declaratory relief, unfair business practices, and seeks a judgment that the noncompetition agreement (1) does not and cannot preclude Montoya from working for Equinix in California, (2) is unenforceable against him in California, and (3) constitutes an unfair business practice.

On October 30, 2019, DLR filed this suit in state court in Dallas County, and Montoya removed it to this Court by asserting diversity jurisdiction. The live complaint brings claims for breach of the noncompetition agreement, failure to repay the sign-on bonus, wrongful use of confidential information, misappropriation of confidential information, violation of the Texas Uniform Trade Secrets Act, breach of fiduciary duty and loyalty, and conversion.

## II. Legal Background

Federal Rule of Civil Procedure 12(b)(2) authorizes a district court to dismiss an action for lack of personal jurisdiction. On such a motion, the plaintiff bears the burden of establishing a prima facie case for jurisdiction over the nonresident defendant.[1] If a plaintiff makes that prima facie case, the burden shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable."[2] The Court may resolve jurisdictional facts by looking to affidavits, interrogatories, depositions, oral testimony, or any

---

[1] *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).

[2] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

combination of the recognized methods of discovery.[3] And the Court need only accept as true uncontroverted allegations in the complaint if those allegations are not conclusory.[4]

Additionally, "a federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution.[5] The Texas long-arm statute reaches to the limits of federal due process, which means "the court must determine whether (1) the defendants have established 'minimum contacts' with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend 'traditional notions of fair play and substantial justice.'"[6]

Courts subdivide the minimum contacts inquiry into specific and personal jurisdiction.[7] General personal jurisdiction exists when the nonresident defendant's contacts with the forum state (even if unrelated to the lawsuit) are continuous, systematic, and substantial.[8]

By contrast, the three-step analysis for specific jurisdiction is:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results

---

[3] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[4] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

[5] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

[6] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[7] *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999).

[8] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[9]

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."[10] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[11] Accordingly, "the relationship must arise out of contacts that the defendant himself creates with the forum state."[12]

If the plaintiff establishes minimum contacts, "the burden shifts to defendant to show that the assertion of jurisdiction would be unfair."[13] In evaluating whether the exercise of personal jurisdiction over the defendants would be unfair, courts examine a number of factors, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies.[14]

### III.    Application

With this bevy of pending motions, order of operations is key. The Court cannot wade into the merits of this dispute and order the extraordinary remedy of

---

[9] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quotation marks omitted).

[10] *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation marks omitted).

[11] *Id.*

[12] *Id.* (quotation marks omitted).

[13] *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008).

[14] *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

injunctive relief (even temporary) if it lacks jurisdiction—which is the power to hear a case. As a result, the Court will first consider the motion to dismiss for lack of personal jurisdiction.

Montoya contends he was a New Mexico resident that telecommuted to Dallas, thereby avoiding creating minimum contacts with Texas. Specifically, he argues he lacks the significant contacts with Texas to subject him to general jurisdiction and the specific claims do not arise from his contacts with Texas. DLR responds that Montoya's contacts are sufficient to confer general jurisdiction, and the claims arise from his contacts (conferring specific jurisdiction). The Court agrees with Montoya.

Factually, Montoya was a New Mexico resident when he began working for DLR—a company headquartered in San Francisco. He was assigned to the Dallas office, but DLR allowed him to create a home office in New Mexico to telecommute from. He elected to have DLR treat him as a Texas employee, which necessarily involves not withholding income taxes because Texas (unlike New Mexico) has no state income tax.[15] He reported to Dallas one week per month and was at the Dallas office 62 times during his employment. He also worked at DLR locations in San Francisco, Seattle, Miami, Ashburn (Virginia), Las Vegas, and Phoenix. He also traveled to Hong Kong, London, and Amsterdam, and he worked with contacts across the United States, Europe, Brazil, Hong Kong, and Singapore. Montoya tendered his

---

[15] New Mexico state income tax ranges from 1.7% to 4.9% would have been levied. *See* N.M. Stat. § 7-2-1 (2015), *et seq.*

resignation from DLR in Texas. Equinix required Montoya to become a California resident, and he has been transitioning to maintain his permanent residence there.

The Court concludes that these facts are not so continuous and systematic that they render Montoya "at home" in Texas.[16] This is because Montoya's contacts with Texas were largely because of his employment with DLR, and a "nonresident corporate officer or employee is protected from the trial court's exercise of general jurisdiction over him when his only contacts with Texas were made on behalf of his employer" under the Fifth Circuit's fiduciary shield doctrine.[17] The contacts Montoya had with Texas not on DLR's behalf were minimal—such as his use of DLR's Dallas address for his own address for human resources and state income tax purposes, entering into a telecommuting agreement governed by Texas law, and resigning in Texas.[18] These minimal contacts are not so continuous and systematic as to render Montoya at home in Texas, and so there is no general jurisdiction over him.

Specific jurisdiction is a more intricate matter. The first prong of the minimum contacts analysis is satisfied if the defendant "purposefully availed [him]self of the

---

[16] *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014).

[17] *Harries v. Stark*, 2015 WL 4545071, at *7 (N.D. Tex. July 28, 2015) (Lindsay, J.). *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (describing the fiduciary shield doctrine as "hold[ing] that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation").

[18] DLR argues in a footnote in a sur-reply that Montoya's trips to Texas should also constitute a personal benefit because, without the telecommuting agreement, he would have lived and officed in Dallas. That argument misses the simple point of the fiduciary shield doctrine that a nonresident's contacts with a forum only on behalf of his employer don't count as contacts. If courts counted them as contacts because the employer could have forced the employee to work there, it would abolish the fiduciary shield doctrine. Minimum contacts analysis focuses on what actually happened. We leave questions of what might have happened in an alternate reality to Phase 4 of the Marvel Cinematic Universe.

privileges of conducting activities there."[19] Under the fiduciary shield doctrine, the Court will exclude Montoya's contacts with Texas that were on behalf of DLR, such as his 63 trips to his office in Dallas. The remaining contacts are Montoya's election to be treated as a Texas employee for income tax purposes and use of the Dallas office as his address, entering into a telecommuting agreement governed by Texas law, and resigning in Texas.[20] Whether or not these contacts constitute purposeful availment,[21] this lawsuit does not arise from them.

The second step of the minimum contacts analysis for specific jurisdiction is whether the claims arose from those contacts. The Court must address two separate issues the parties hotly contest: the exception to the fiduciary shield doctrine and but-for causation. The parties spilled much ink over the interplay of the fiduciary shield doctrine here. Yes, the doctrine has an exception for nonresident officers or employees who commit torts from afar during the course and scope of employment.[22] The talk of minimum contacts, doctrines, and exceptions can certainly be confusing.

---

[19] *Seiferth*, 472 F.3d at 271.

[20] DLR also argues in its sur-reply that the fiduciary shield doctrine doesn't apply if an individual is acting on behalf of himself instead of his company. [Doc. No. 46 at 1–3]. And DLR argues that here, these facts (the address in Texas for income tax purposes, telecommuting, and resignation) are acts Montoya took on his own behalf that do not qualify for exclusion under the fiduciary shield doctrine. The Court accepts this assertion. But it doesn't help DLR because DLR's claims don't arise from these contacts.

[21] The three factors the Fifth Circuit set out for assessing purposeful availment are: "(1) the existence and degree of purposefulness with which the effect in that forum was created; (2) whether the defendant has other substantial contacts with the forum unrelated to the suit; and (3) the substantiality of the effect itself." *Waffenschmidt v. MacKay*, 763 F.2d 711, 723 (5th Cir. 1985).

[22] *See Stuart*, 772 F.2d at 1197 (holding that fiduciary shield doctrine does not apply if "individual officers, as agents of the corporation would be personally liable to any third person they injured by virtue of their tortious activity even if such acts were performed within the scope of their employment as corporate officers").

But the Fifth Circuit's fiduciary shield doctrine exception functions just like specific jurisdiction: did the claim arise from the nonresident's forum contacts?

Likewise, the but-for causation issue does not fundamentally change the second prong of the specific jurisdiction issue (whether the claim arises from the forum contacts). The two circuits relevant to this case, the Ninth and the Fifth, have different approaches to the interplay between but-for causation and what it means to have a cause of action arising from forum contacts. The Ninth Circuit's position is broader than the Fifth Circuit approach of proximity of the cause being most important.

The Ninth Circuit has an expansive view of "arises from," where specific jurisdiction exists if the claim would not have occurred but for the nonresident's contacts with the forum.[23] Under such a view, things such as Montoya's resignation, or perhaps Columbus attempting a new trade route to India, and Washington crossing the Delaware might all be viewed as but-for causes of Montoya allegedly using DLR's trade secrets in his job with Equinix.

But we aren't in the Ninth, and the Fifth Circuit's relationship with but-for causation seems to be less like the Ninth Circuit marriage and more like nonexclusive dating that started off promising but has since soured.[24] In *Prejean v. Sonatrach, Inc.* in 1981, the Fifth Circuit observed in a footnote that,

---

[23] *See Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd sub nom. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ("Our circuit, in *Cubbage v. Merchent*, implicitly adopted the 'but for' test in analyzing whether a cause of action arises from a defendant's continuing efforts to solicit business in the forum state. Today, we make its adoption explicit.").

[24] Perhaps less like Vision and the Scarlet Witch and more like Iron Man and Captain America.

> Logically, there is no reason why a tort cannot grow out of a contractual contact. In a case like this, the contractual contact is a "but for" causative factor for the tort since it brought the parties within tortious "striking distance" of each other. While the relationship between a tort suit and contractual contact is certainly more tenuous than when a tort suit arises from a tort contact, that only goes to whether the contact is by itself sufficient for due process, not whether the suit arises from the contact.[25]

Later, the Fifth Circuit seemed to put some distance between itself and the but-for test in *Aviles v. Kunkle* in 1992.[26] There, the plaintiff Texas residents sued the defendant Ohio residents in Texas over their employment in Ohio during a harvest.[27] The employment only occurred because of a phone call and letter to the plaintiffs in Texas.[28] Under the but-for test from *Prejean*, the employment and claim would not have occurred but for the Texas contacts. But instead, the Fifth Circuit held there was no specific jurisdiction: "plaintiffs' cause of action is not based upon any contract, tort, or recruitment in Texas, but upon the alleged violation of two federal statutes arising solely out of their employment in Ohio. Therefore, specific jurisdiction may not be founded on any of these bases."[29]

---

[25] 652 F.2d 1260, 1270 n.21 (5th Cir. 1981).

[26] 978 F.2d 201, 204 (5th Cir. 1992)

[27] *Id.* at 203.

[28] *Id.*

[29] *Id.* at 205.

For its part, the Texas Supreme Court has called but-for causation "judicially unmoored"[30] and viewed the Fifth Circuit as veering away from it.[31]  The Texas Supreme Court cited *Kelly v. Syria Shell Petroleum Development B.V.*, for the proposition that Syrian oil companies were not amenable to specific jurisdiction in Texas because the wrongful-death claims of workers killed in Syria were not closely related to the companies' recruiting activities in Texas.[32]  Texas Supreme Court decisions regarding the limits of constitutional due process are not binding on this Court.  But the Court simply uses it as a reference point to show that the Fifth Circuit pivot away from but-for causation on specific jurisdiction was an open and obvious shift.  And while the Fifth Circuit has not expressly overruled *Prejean*, this Court is obligated to follow the Fifth Circuit's current observations of what constitutes causation for specific jurisdiction.

As a result, the Court will apply the more recent analysis of *Aviles* for causation.  There, the employment in Ohio would not have existed without communications into Texas, but the Fifth Circuit found the claims arose from the acts in Ohio and not the Texas communications.[33]

---

[30] *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 581 (Tex. 2007) ("We agree with those courts and commentators who view the but-for test as too broad and judicially unmoored to satisfy due-process concerns.").

[31] *Id.* ("Few courts beyond the Ninth Circuit have adopted the but-for approach to relatedness. Specifically, both the Fifth and Sixth Circuits have signaled a movement away from such a broad test.").

[32] *Id.* (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855–56 (5th Cir. 2000)).

[33] *Id.* at 205.

Here, the claims based on misuse of information and violation of the noncompetition agreement arose from Montoya's actions in California:

- Count I is for breach of the noncompetition agreement, where Montoya allegedly breached by taking the job in California with Equinix.

- Count III is for wrongful use of confidential information, where he is in a position to use DLR's confidential information with Equinix.

- Count IV is for misappropriation of confidential information, where it claims Montoya misappropriated its confidential information and seeks damages, injunctive relief, and disgorgement of Montoya's profit from the alleged misappropriation.

- Count V is for violation of the Texas Uniform Trade Secrets Act, where Montoya allegedly obtained DLR's trade secrets that he knew were confidential and has threatened to use them with Equinix.

- Count VI is for breach of fiduciary duty and the duty of loyalty, where DLR alleges Montoya breached a common-law fiduciary duty to keep DLR's trade secrets confidential by using DLR's trade secrets with Equinix.

- Count VII is for conversion, where Montoya's conversion of DLR's property for his own benefit is grounds for damages.

Here's the problem with these claims: as to misappropriation, DLR never alleges Montoya misappropriated the trade secrets from Texas; and as to misuse, the allegation is that Montoya is using them in California. While courts are not the most

skilled at math, this Court is aware that California plus not Texas does not equal Texas.

The remaining claim (other than the misappropriation claims) is for breach of contract by failing to repay the sign on bonus (Count II). This claim arose from Montoya's failure to pay while he was a resident of New Mexico and now California. As a result, DLR has not made a prima facia case of specific jurisdiction over Montoya.[34]

## IV.   Conclusion

For the foregoing reasons, the Court concludes DLR has not made a prima facia case that its claims against Montoya arose from his contacts with Texas. As such, the Court lacks personal jurisdiction over Montoya, grants his motion to dismiss, and dismisses this action without prejudice.

**IT IS SO ORDERED** this 8th day of June, 2020.

*[signature]*

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[34] Could DLR make a prima facia case if given another chance? This is DLR's second complaint. And Montoya raised a lack of personal jurisdiction in response to DLR's original complaint. DLR knew it must show its claims arose from Montoya's Texas contacts and made no such showing. Of course, because the Court lacks jurisdiction, this dismissal is without prejudice. If DLR uncovers additional Texas contacts that claims arise from, it may file a new lawsuit.